UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
SHANG SHING CHANG, JIE LI,
XIAOXI XIE, BIN YANG, LONG
CHEN, YA XU, YI MING MA, LU
YANG, individually and on behalf of all
other employees similarly situated,

   Plaintiffs - Counter-Defendants,

  -against-      **MEMORANDUM AND ORDER**
              15-CV-4385 (FB) (ST)

KEVIN WANG, CLEAN AIR CAR
SERVICE & PARKING
CORPORATION, CLEAN AIR CAR
SERVICE & PARKING BRANCH ONE,
LLC, CLEAN AIR CAR SERVICE &
PARKING BRANCH TWO, LLC,
CLEAN AIR CAR SERVICE &
PARKING BRANCH 3, LLC, CLEAN
AIR CAR SERVICE & PARKING
BRANCH 5, LLC, CLEAN AIR CAR
SERVICE & PARKING BRANCH 6,
LLC, CLEAN AIR CAR SERVICE &
PARKING BRANCH 7, LLC, JOHN
DOE and JANE DOE 1-10,

   Defendants - Counter-Claimants.
---------------------------------------------------x

*Appearances:*              *For the Defendants:*
*For the Plaintiffs:*          MARC J. MONTE, ESQ.
WILLIAM BROWN, ESQ.       MUZAMMIL JAMIL, ESQ.
Hang & Associates, PLLC       Monte Wang & Associates, PLLC
136-18 39th Avenue, Suite 1003     130-30 31st Avenue, Suite 801
Flushing, New York 11354       Flushing, New York 11354

**BLOCK, Senior District Judge:**

The plaintiffs in this wage and hour case allege that their employers—a group of car services and a parking garage owned by defendant Kevin Wang—did not pay them overtime premiums as required by the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), and failed to provide wage notices as required by the NYLL. Three of the plaintiffs—Shang Shing Chang, Jie Li and Duke Lee—further claim that they were improperly classified as exempt employees not entitled to overtime.

In addition to denying the plaintiffs' allegations, the defendants have asserted counterclaims for wage overpayments and theft. They have also asked the court to decertify the collective action.

Both parties have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Taken collectively, the motions frame six questions:

I. Defendants' Motion

   A. Do the defendants' time and pay records resolve the plaintiffs' overtime claims as a matter of law?

   B. Should the Court decertify the FLSA claims as a collective action?

   C. Do documents provided by the defendants resolve the plaintiffs' wage notice claims as a matter of law?

II. Plaintiffs' Motion

    A. Were Chang, Li and Lee exempt employees as a matter of law?

    B. Are the defendants entitled to assert counterclaims for overpayment of wages?

    C. Does the Court have subject-matter jurisdiction over the defendants' counterclaim for theft?

For the following reasons, the motions are granted in part and denied in part.[1]

## I. Defendants' Motion

**A. Overtime**

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). Since the FLSA requires employers to keep records of their employees' wages and hours, *see* 29

---

[1] The plaintiffs originally claimed that they did not receive the legal minimum wage or spread-of-hours pay, and that the defendants engaged in unfair business practices. They have conceded that the defendants are entitled to summary judgment on those claims.

In addition, the plaintiffs claimed that they did not receive pay stubs. They failed to respond to the defendants' motion for summary judgment on that claim. *See Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (E.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

3

U.S.C. § 211(c), an employee can satisfy that burden by producing those records. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* 29 U.S.C. § 254(a). That approach works, however, only if "the employer has kept proper and accurate records." *Id.*

If, by contrast, the employer's records are not accurate, "an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'" *Kuebel*, 643 F.3d at 362 (quoting, with alteration, *Anderson*, 328 U.S. at 687). This burden is not high, and testimony based on the employee's own recollection is sufficient to defeat summary judgment. *See id.* "A similar standard to *Anderson* is applied in deciding overtime claims under New York law." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 380 (E.D.N.Y. 2012).

The defendants assert that the logs of their drivers and time-clock records of their parking lot attendants are accurate, and that the plaintiffs must offer "evidence over and above [their] mere recollection or conclusory allegations" to rebut that assertion. Defs'. Mem. of L. 10. While the Court agrees that allegations (conclusory or otherwise) cannot defeat summary judgment, *Kuebel* stands for the proposition that a plaintiff's *testimony* is sufficient, not only to support a "just and reasonable inference" under *Anderson*, but also to raise an issue of fact regarding the accuracy of the employer's records.

The plaintiff in *Kuebel* "averred that to the best of his memory, he worked more than forty hours 'just about every week,' and 'averaged from one to five hours of uncompensated overtime every week.'" 643 F.3d at 356. These extra hours were not included on his self-created timesheets "because his supervisors instructed him not to record more than forty hours per week." *Id.* The district court declined to apply *Anderson*, but the Second Circuit reversed:

> Kuebel has testified that it was [his employer], through its managers, that caused the inaccuracies in his timesheets. While ultimately a factfinder might or might not credit this testimony, that is a determination for trial, not summary judgment. In sum, we hold that because Kuebel has presented evidence indicating that his employer's records are inaccurate—and that although it was he who purposefully rendered them inaccurate, he did so at his managers' direction—the district court should have afforded Kuebel the benefit of *Anderson's* "just and reasonable inference" standard.

*Id.* at 363. The circuit court noted that a contrary rule would allow an employer to "unofficially pressure [its employees] not to record overtime, and then, when an employee sues for unpaid overtime, assert that his claim fails because his timesheets do not show any overtime." *Id.*

The plaintiffs in this case have asserted, either in depositions or declarations, that they worked somewhere between fifty and sixty hours per week, but received no overtime payments.[2] In response to the defendants' claim that their records do not

---

[2]Several plaintiffs were paid a fixed salary or daily wage regardless of the number of hours worked. "Unless the contracting parties intend and understand

5

show any unpaid overtime hours, they attest that they were required to record breaks of thirty to sixty minutes even if they worked during that time. Under *Kuebel*, the plaintiffs' averments are sufficient to both trigger and satisfy *Anderson*'s "just and reasonable inference" standard.

In addition, the employees who were drivers attest that their logs do not accurately reflect total hours worked because only time spent transporting passengers was recorded; at their employer's direction, time spent waiting for passengers, driving to assignments, and refueling was excluded. This, too, reveals a question of fact. "[W]hether an employee's expenditure of time is considered work under the FLSA turns in part on whether that time is spent predominantly for the benefit of the employer or the employee." *Singh v. City of New York*, 524 F.3d 361, 368 (2d Cir. 2008). That inquiry requires an assessment of all the relevant circumstances—the classic purview of a factfinder. *See Reich v. S. New Eng. Telecomm. Corp.*, 121 F.3d 58, 64 (2d Cir. 1997) ("The determination of what constitutes work is necessarily fact-bound .").

---

the weekly salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours." *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999) (citing cases). Similarly, workers paid day rates are "entitled to extra half-time pay at [their regular rate] for all hours worked in excess of 40 in the workweek." 29 C.F.R. § 778.112.

**B.  Collective Action Decertification**

The Court previously laid out the law regarding certification of a collective action under the FLSA in its order authorizing notice to potential opt-in plaintiffs:

> Certification of a collective action is a two-step process. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." If the Court makes such a determination, the potential plaintiffs must be given notice of the action and an opportunity to opt in. Because the determination is only preliminary and must necessarily be made early in the proceedings, the first step imposes on the named plaintiff the minimal burden of making a "modest factual showing" based on the pleadings and affidavits.

*Chang v. Clean Air Car Serv. & Parking Corp.*, 2016 WL 4487748, at *2 (E.D.N.Y. Aug. 25, 2016) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).

> Once the opt-in period is over and discovery is completed, the court—usually at the defendant's instance—applies "a more heightened scrutiny." If the facts developed during discovery refute the step-one determination, the court will decertify the collective action and only the named plaintiffs' claims will proceed, and opt-in plaintiffs can file a separate action.

*Id.* (quoting *Jacobs v. N.Y. Founding Hosp.*, 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007).

No facts developed during discovery refute the Court's step-one determination that the potential opt-in plaintiffs are similarly situated to the named plaintiffs. As explained in the prior order, FLSA plaintiffs are similarly situated as long as they were "victims of a common policy or plan that violated the law." *Id.* (quoting *Hoffman v.*

*Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "[T]hey can be 'similarly situated despite distinctions in job title, function, or pay.'" *Id.* at *3 (quoting *Jirak v. Abbot Labs.*, 566 F. Supp. 2d 845, 849 (N.D. Ill. 2008)). As discussed in Part I of this Memorandum and Order, discovery has yielded enough support for the plaintiffs' claim that their employer had a common policy of requiring them not to log all time worked to survive summary judgment.

**C.     Wage Notices**

Under New York's Wage Theft Prevention Act, an employer must give his or her employees written notice detailing "the rate or rates of pay and basis thereof," "allowances, if any, claimed as part of the minimum wage," "the regular pay day designated by the employer," and the employer's name, physical address, mailing address and telephone number. N.Y. Lab. L. § 195(1)(a). The notice must be given at the time of hire in both English and the employee's primary language. *See id.*

The defendants argue that documents in the employment files of eight of the nine named plaintiffs establish compliance with the notice requirement as a matter of law. Since they have provided no evidence that plaintiff Ya Xu received the required notice, her claim will go forward. For their part, plaintiffs Xiaoxi Xie and Lee apparently do not dispute compliance; summary judgment will be granted on their claims.

Two plaintiffs—Chang and Li—did not receive notice in the form provided to

8

employers by the New York Department of Labor. A third—Bin Yang—received the form, but not until four months after he was hired. The defendants respond that they provided the required information at the time of hire in their written employment agreements and employee handbooks. While the Court agrees that § 195(1)(a) does not require a particular form of notice, the other documents do not, in fact, contain all information required by the statute. In addition, they are in English, while Chang, Li and Bin Yang attest that their primary language is Chinese. These deficiencies require the Court to deny defendants' motion for summary judgment with respect to those plaintiffs.

With respect to the remaining three plaintiffs, the defendants have submitted notices in the form provided by the Department of Labor, written in both English and Chinese, and ostensibly signed by the plaintiffs at the time of hire. Those plaintiffs attempt to dispute compliance in other ways. At his deposition, Long Chen acknowledged signing the form, but could not recall when he did so. Lu Yang did not recall signing the form, but recognized his signature on it. "[N]ot recalling does not create an issue of fact." *Costello v. St. Francis Hosp.*, 258 F. Supp. 2d 144, 156 (E.D.N.Y. 2003). While Yi Ming Ma flatly denies signing the form submitted by the defendants, he does so in a declaration; at his deposition, he admitted signing. "[I]n opposing summary judgment, a party who has testified to a given fact in his deposition cannot create a triable issue merely by submitting his affidavit denying the

fact." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000).

In sum, defendants' motion is granted with respect to the wage notice claims of Xie, Lee, Chen, Lu Yang and Ma. The motion is denied with respect to the wage notice claims of the remaining plaintiffs.

## II. Plaintiffs' Motion

### A. Exempt Status

With respect to Chang, Li and Lee, the defendants invoke 29 U.S.C. § 213(a)(1), which exempts from FLSA's overtime requirement "any employee employed in a bona fide executive, administrative or professional capacity." The NYLL "applies the same exemptions as the FLSA." *See Reiseck v. Universal Comm'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010). Those plaintiffs argue that they do not fall within the exemption as a matter of law. *See id.* at 104 ("[T]he employer invoking the exemption bears the burden of proving that its employees fall within the exemption.").

According to the Department of Labor's regulations, an administrative employee is an employee (1) who is paid a salary equivalent to $455 per week, (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29

10

C.F.R. § 541.200(a). Whether those criteria are satisfied is a mixed question of law and fact: "The question of how the [employees] spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law[.]" *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

The parties' submissions reveal disputes of fact as to how Chang, Li and Lee "spent their working time." Chang was eventually promoted to "driver supervisor," a position which required him to train, test and supervise new drivers; however, he attests that he also refueled and maintained vehicles, and served as a standby driver. Li was eventually promoted to "garage supervisor," in which role he performed some administrative tasks; however, he attests that he spent most of his time parking vehicles. Lee was eventually promoted to "branch supervisor," and concedes that he performed some office work; however, he attests that his primary duties continued to involve parking cars and other manual work. Given these conflicting versions of the actual work duties of these plaintiffs, the Court cannot resolve their exempt status as a matter of law.

**B. Wage Overpayments**

The defendants claim that drivers failed to accurately record their breaks and therefore received pay for time they did not work. They seek to recover these claimed overpayments under theories of fraud and unjust enrichment.

11

As noted in connection with the overtime claims, whether the plaintiffs are entitled to pay for what the defendants call "break" time presents a question of fact. The plaintiffs nevertheless seek summary judgment based on the voluntary payment doctrine. "That common-law doctrine bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003). The plaintiffs argue that the defendants had the requisite knowledge because they were aware that drivers' self-reported logs might be inaccurate, and failed to implement a more reliable system, such as GPS tracking.

The plaintiffs fail to appreciate the effect of fraud on what might otherwise be full knowledge of the facts. A person relying on a misstatement or material omission does not have full knowledge. Thus, the voluntary payment doctrine does not apply to claims "predicated on lack of full disclosure." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009) (citing *Samuel v. Time Warner, Inc.*, 809 N.Y.S.2d 408, 418 (Sup. Ct. N.Y. County 2005)). For example, the doctrine did not bar recovery for a plaintiff who knew he was receiving slow Internet service because the defendant had misrepresented the reason for the slow service. *See Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 649 (S.D.N.Y. 2011). Here, the defendants' knowledge of the limitations of a self-reporting system did not give the plaintiffs carte blanche to abuse the system.

The plaintiffs further argue that the defendants are barred from recovering overpayments by New York Labor Law § 193(1)(c):

> No employer shall make any deduction from the wages of an employee, except deductions which . . . are related to recovery of an overpayment of wages where such overpayment is due to a mathematical or other clerical error by the employer.

By its terms, the statute bars *deductions* from wages. While that prohibition covers things like garnishment, it "does not affect [a] counterclaim to recover the entire amount of overpayment in a separate proceeding." *Hennessey v. Bd. of Educ.*, 642 N.Y.S.2d 958, 959 (2d Dep't 1996). *Accord Huntington Hosp. v. Huntington Hosp. Nurses' Ass'n*, 302 F. Supp. 2d 34, 42-43 (E.D.N.Y. 2004) (citing *Hennessey* and concluding that "[i]t would make little sense to prohibit completely an employer from correcting salary overpayment errors.").

**C.   Theft**

The defendants claim that plaintiff Long Chen pocketed money received from a parking-lot customer and fabricated claims for reimbursement following his termination. Their counterclaim for theft seeks to recover those amounts. The plaintiffs argue that the Court lacks subject-matter jurisdiction over that counterclaim.

In a federal-question case, a district court has supplemental jurisdiction over all claims that are "so related to [the claims within the court's original jurisdiction] that they form part of the same case or controversy under Article III of the United States

Constitution." 28 U.S.C. § 1367(a). That condition is satisfied when the claims all "derive from a common nucleus of operative fact," such that a party "would ordinarily be expected to try them all in one judicial proceeding." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir.2003) (quoting, ultimately, *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

The defendants attempt to tie their theft counterclaim to the plaintiff's FLSA claims with Chen's representation during his deposition that he joined the lawsuit to avenge what he thought was his wrongful termination:

A. Well, I personally want to sue the company for the unreasonable part.

Q. What was the unreasonable part?

A. About overtime. Also no reason for termination.

Dep. of Long Chen (Nov. 4, 2016) 104. There is—unsurprisingly—no authority for the proposition that a party's motivation creates a common nucleus of operative fact. At most, Chen's alleged theft and his overtime claims both related to his employment with the defendants. As the Court has previously held, the employment relationship is "insufficient to create a 'common nucleus of operative fact' where it is the sole fact connecting plaintiff's federal overtime claim and the remaining state law claims." *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 395 (E.D.N.Y. 2007).

## CONCLUSION

The defendants' motion for summary judgment is granted with respect to the wage notice claims of Xiaoxi Xie, Duke Lee, Long Chen, Lu Yang and Yi Ming Ma; in all other respects, it is denied. The plaintiffs' motion is granted with respect to the defendant's counterclaim against Chen for theft; in all other respects, it is denied. Finally, the defendants' motion to decertify the collective action is denied.

Accordingly, the case will proceed to trial on (1) the overtime claims of all named and opt-in plaintiffs, (2) the wage notice claims of all plaintiffs other than those listed above, and (3) the defendant's counterclaims other than theft. Given the difficulty of comprehensibly presenting all of those claims to a jury, the parties are directed to devote their best efforts towards a mutually agreeable resolution of the case.

    **SO ORDERED.**

    _/S/ Frederic Block_____
    FREDERIC BLOCK
    Senior United States District Judge

Brooklyn, New York
March 12, 2018