**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

SHANG SHING CHANG, XIAOXI XIE
HUAI LU YANG, *as distributee of* ESTATE OF
BIN YANG, YA XU  LU YANG, ZHE ZHAO,
 and YONG JUN CHAO,
*individually and on  behalf of all other*
*employees similarly situated,*

                              Plaintiffs,

                 v.

CLEAN AIR CAR SERVICE & PARKING,
CORPORATION, CLEAN AIR CAR SERVICE &
PARKING BRANCH ONE, LLC, CLEAN AIR CAR
SERVICE & PARKING BRANCH TWO, LLC,
CLEAN AIR CAR SERVICE & PARKING BRANCH 3,
LLC, CLEAN AIR CAR SERVICE & PARKING
BRANCH 5, LLC, CLEAN AIR CAR SERVICE &
PARKING BRANCH 7, LLC, CLEAN AIR SERVICE
& PARKING BRANCH 6, LLC, KEVIN WANG,
John Doe and Jane Doe #1-10

                            Defendants.
------------------------------------------------------------X

**FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW**

**15-cv-04385-ST**

**TISCIONE, United States Magistrate Judge:**

       This opinion sets forth the Court's Findings of Fact and Conclusions of Law in this case

pursuant to Federal Rule of Civil Procedure 52 following a nonjury trial in this matter.  This Court

finds that Plaintiffs have failed to prove all of their claims by a preponderance of the evidence

against all Defendants and, therefore, no damages are awarded.  Likewise, Defendants have failed

to prove their counterclaims by a preponderance of the evidence as well.[1]

---

[1] Note, the Court also heard testimony from Duke Lee who is not a named Plaintiff but will be discussed *infra* as well.
Notably, however, Duke Lee is not even mentioned in Plaintiffs' Proposed Findings of Fact.  *See generally* ECF 233.

## I.      BACKGROUND

### A. Parties[2]

Plaintiffs were all employees of Defendants described below.  The Court will explain the relevant facts for each Plaintiff *infra* when doing the Findings of Fact and Conclusions of Law analysis and will first provide an overview of the parties and facts applicable to all Plaintiffs below. The following employees of Defendants were all mentioned in Plaintiffs' Amended Complaint and provided testimony in the instant trial: Shang Shing Chang ("Chang"), Xiaoxi Xie ("Xie"), Bin Yang ("Yang"), Ya Xu ("Xu"), Lu Yang ("Yang").  Am. Compl. at ¶¶ 7, 9-10, 12, and 14.[3]

Defendant Kevin Wang is the owner, officer, director and/or managing agent of Clean Air Car Service and Parking Corporation located at 41-60 Main Street Suite 308, Flushing, New York 11355, and Clean Air Car Service & Parking Branch One, LLC, Clean Air Car Service & Parking Branch Two, LLC, Clean Air Car Service & Parking Branch 3, LLC, Clean Air Car Service & Parking Branch 5, LLC, Clean Air Car Service & Parking Branch 7, LLC, and Clean Air Car Service and Parking Branch 6, LLC, all located at 136-20 38th Avenue, Suite 10J, Flushing, New York 11354 ("Defendants").  *Id.* at ¶ 19.  Defendants operate their Medicaid-Medicare medical transportation business service with New York State government and/or insurance companies. Plaintiffs' Proposed Findings of Fact at ¶ 3, ECF 233.  Defendants' business mainly provides transportation services for medical appointments.  *Id.* at ¶ 4.

### B. Relevant Facts and Allegations for All Plaintiffs

Plaintiffs filed this action on their own behalf and on behalf of similarly situated

---

[2] These facts are lifted from Plaintiffs' Amended Complaint, dated January 9, 2016, found at ECF 32 for ease of reference.  Additionally, some facts are also lifted from Plaintiff's Proposed Findings of Fact that are undisputed in the litigation.  *See* ECF 233 [Plaintiffs' Proposed Findings of Fact].  As noted above, since the Court will explain each individual Plaintiff's employment circumstances in-depth *infra*, the above section is only intended to be a general overview for now applicable to all Plaintiffs that the Court heard testimony from.

[3] Note, the Court also heard testimony from the following individuals/employees of Defendants that will be analyzed *infra* as well, but were not mentioned in the Amended Complaint: Zhe Zhao, Duke Lee and Yong Jun Chao.

employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"), arising from Defendants' alleged willful and unlawful employment policies, patterns and/or practices.  *See* Am. Compl. at ¶ 1.

Plaintiffs allege that Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, compensation for all hours worked, minimum wage, and overtime compensation for all hours worked over forty (40) each workweek.  *Id.* at ¶ 2.  More specifically, Plaintiffs allege that Defendants only allowed Plaintiffs to record no more than 50 hours per week or no more than 10 hours per day on their time sheets. Plaintiff's Proposed Findings of Fact at ¶ 14.  Within the overtime claims, a common claim amongst Plaintiffs is that they were unable to take a lunchbreak during their shifts, but that they were still required to record a lunch break on their working sheets.  *Id.* at ¶ 13.

Plaintiffs allege under the FLSA that they are entitled to recover the following relief from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.  Am. Compl. at ¶ 3.

Plaintiffs further allege under the New York Labor Law ("NYLL") § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover the following relief from the Defendants: (1) unpaid wages and minimum wages, (2) unpaid overtime compensation, (3) unpaid "spread of hours" premium for each day they worked ten (10) or more hours, (4) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, and unpaid overtime pursuant to the NY Wage

Theft Prevention Act, (6) prejudgment and post-judgment interest and (7) attorneys' fees and costs. *Id.* at ¶ 4.

Finally, Defendants originally submitted counterclaims for fraud, unjust enrichment and and costs and fees for bad faith, vexatious litigation. ECF 20 [Defendants' Answer, dated December 15, 2015] at 14-16. However, Defendants have amended their counterclaims in their Proposed Findings of Fact, ECF 236, to only include: (1) Overpayment to Duke Lee; (2) Overpayment to Plaintiff Ya Xu; and (3) Bad Faith and Request for Costs. *Id.* at 36-37.

### C. Procedural History

Plaintiffs filed their Amended Complaint on January 9, 2016. ECF 32.

On November 14, 2022, the parties consented to this Court's jurisdiction for all further proceedings including the instant trial. ECF Entry dated November 14, 2022.

This Court conducted a bench trial starting on April 4, 2023 and ending on January 23, 2024. ECF 232 [Transcripts of Trial].[4]

At the end of the trial, this Court directed Plaintiffs and Defendants to each file Proposed Findings of Fact and Conclusions of Law, which the parties did on June 14, 2024. ECF 233-34 [Plaintiffs]; ECF 236 [Defendants].

This Court has reviewed these submissions, the facts and law stipulated to by the parties, and the evidence adduced at trial in reaching the determinations entered below.

## II.   JURISDICTION

This Court has original federal question jurisdiction in this matter under 29 U.S.C. §216(b)

---

[4] For ease of reference, the following witnesses testified on each day of trial: April 4, 2023 (Huai Lu Yang, Duke Lee, Kevin Wang, and Fiona Roberts), April 5, 2023 (Kevin Wang and Shang Shing Chang), April 6, 2023 (Shang Shing Chang and Kevin Wang), April 18, 2023 (Xiaoxi Xie and Zhe Zhao), April 19, 2023 (Lu Yang), April 28, 2023 (Lu Yang and Yong Jun Chao), May 8, 2023 (Lu Yang and Ya Xu), October 5, 2023 (Ya Xu) and January 23, 2024 (Kevin Wang).

and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

## III.    FINDINGS OF FACT and CONCLUSIONS OF LAW

Since the Court will proceed to analyze each of the eight Plaintiffs who testified individually, this Court will first note all of the relevant legal standards below necessary for Plaintiffs' claims.  The Court will then provide Findings of Fact and Conclusions of Law for each Plaintiff.

### A.  Relevant Legal Standards

#### 1.  *FLSA and NYLL Wage and Overtime Claims*

Under both the FLSA and the NYLL, an employee who works in excess of 40 hours in a single workweek is entitled to an overtime wage of at least one-and-a-half times the regular rate at which the employee is paid.  *See Ochoa v. Aucay Gen. Constr. Inc.*, No. 19CV3866ENVST, 2020 WL 9814092, at *6 (E.D.N.Y. Sept. 15, 2020) (citing 29 U.S.C. § 207(a)(1); 12 NYCRR § 142-2.2); *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013).  "Although a plaintiff may be 'entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice.'" *Gonzalez Mercedes v. Tito Transmission Corp.*, No. 15-CV-1170 (CM) (DF), 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018) (quoting *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-CV-3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) (brackets omitted)), *R & R adopted*, 2019 WL 102007 (S.D.N.Y. Jan. 4, 2019).  "Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016) (citation omitted).

To determine whether an employee received adequate compensation under the FLSA or the NYLL, a court must first determine the employee's regular rate of pay. "[T]he regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). Even though an employer may elect to compensate an employee on a weekly basis, "an employee's regular rate is nevertheless an hourly rate of pay, determined by dividing the employee's weekly compensation by the number of hours for which that compensation is intended." *Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002).

"There is a *rebuttable presumption* that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (quoting *Jiao v. Shi Ya Chen*, No. 03-CV-0165 (DF), 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007)); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608 (SLC), 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement.") (quoting *Pinovi v. FSS Enters., Inc.*, No. 13-CV-2800 (GBD) (KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015)).

Even if no such written agreement exists, "[a] few courts have determined that in situations where there is no written employment agreement or other written instrument memorializing the parties' intentions, the court infers the terms of the parties' agreement from 'the entire course of their conduct, based on the testimonial and documentary evidence in the record.'" *Berrios*, 849 F.

Supp. 2d at 385 (citing *Moon v. Kwon*, 248 F. Supp. 2d 201, 206 (S.D.N.Y.2002)); *see also Jiao v. Shi Ya Chen*, No. 03 CIV. 0165 (DF), 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007).

2.  *Spread of Hours*

Regarding spread of hours claims, under N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4: An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:

(a) the spread of hours exceeds 10 hours; or
(b) there is a split shift; or
(c) both situations occur.

Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." *See Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 473 (E.D.N.Y. 2011) (quoting N.Y. Comp. Codes R. & Regs. tit. 12 § 142–3.16). The majority of New York federal courts have recognized that: "the explicit reference to the 'minimum wage' in section 142–2.4 indicates that 'the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law.'" *Sosnowy*, 764 F. Supp. 2d at 474 (quoting *Almeida v. Aguinaga*, 500 F. Supp. 2d 366, 370 (S.D.N.Y. 2007)); *Li Ping Fu v. Pop Art Intern. Inc.*, No. 10 Civ. 8562, 2011 WL 4552436, at *6 (S.D.N.Y. Sept. 19, 2011) ("*Most courts* in this Circuit have ruled that New York's spread of hours provision applies *only to employees earning minimum wage*.") (emphasis added). While some cases have ruled to the contrary, the above propositions have been recently affirmed in the EDNY specifically. *See Llivichuzhca v. Alphacraft Constr. Inc.*, No. 18CV1017LDHRLM, 2019 WL 13290820, at *3 (E.D.N.Y. Mar. 14, 2019) ("The Court recognizes that, as Plaintiffs argue, there is a split within this circuit as to when spread-of-hours pay is required. . . However, this Court agrees with the courts that have found that *employees who*

*earn more than the state's minimum wage are not entitled to spread-of-hours compensation*.") (emphasis added).

     *3.   Wage Statements and Wage Notices*

Finally, regarding wage statements and wage notices, "the New York Wage Theft Prevention Act ('WPTA'), effective April 9, 2011, mandates that employers provide employees, at the time that the employee is hired, with a notice containing the rate and frequency of his pay, NYLL § 195(1), and to furnish the employee with a written statement with each payment of wages, listing the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked." *Ochoa*, 2020 WL 9814092, at *8 (citing N.Y. Lab. Law § 195(3)).  "The WTPA does not apply retroactively, and thus prior to April 9, 2011, defendants were not obliged to provide plaintiffs with wage statements."  *Baltierra v. Advantage Pest Control Co.*, No. 14-CV-5917 (AJP), 2015 WL 5474093, at *10 (S.D.N.Y. Sept. 18, 2015) (collecting cases).  "Prior to December 29, 2014, employers also were required to provide wage notices 'on or before February first of each subsequent year of the employee's employment with the employer.' " *Baltierra*, 2015 WL 5474093, at *11 (citing NYLL § 195(1)(a) (eff. Apr. 9, 2011 to Dec. 28, 2014)).

However, "[a]n employer's 'complete and timely payment of all wages ... to the employee who was not provided notice' serves as an affirmative defense to a wage notice claim."  *Chang v. Loui Amsterdam, Inc.*, No. 19-CV-3056 (RER), 2022 WL 4586100, at *12 (E.D.N.Y. Sept. 29, 2022) (quoting N.Y. Lab. Law § 198 (1-b)); *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 661 (E.D.N.Y. 2020*)* ("Under Section 198(1-b), employers have an affirmative defense if they pay their employers properly."); *Santiago v. Home Infusion Grp., Inc.*, No. 20 CV 5455 (ENV)(LB), 2022 WL 5175117, at *6 n.11 (E.D.N.Y. June 7, 2022), *report and recommendation adopted*, No. 20CV5455ENVLB, 2022 WL 17798164 (E.D.N.Y. Dec. 19, 2022) (recognizing legitimacy of

affirmative defense that "complete and timely payment of all wages ... serves as an affirmative defense to a wage notice or wage statement claim.") (internal quotations and citations omitted); *Tortorici v. Bus-Tev, LLC*, No. 17CV7507PACKHP, 2021 WL 4177209, at *14 (S.D.N.Y. Sept. 14, 2021) (recognizing affirmative defense pursuant to NYLL § 198(1-d) that to failure to provide proper wage statements under Section 195(3) where Plaintiff was always paid in timely manner).

### 4. This Court Will Exercise Supplemental Jurisdiction Over Plaintiffs' NYLL Claims Even if Plaintiffs' FLSA Claims Fail

Under 28 U.S.C. § 1367, in any civil action in which a district court has original jurisdiction, it "shall" also, with limited exceptions, "have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." *See* 28 U.S.C. § 1367(a). "A court 'may decline to exercise supplemental jurisdiction,' however, if, among other factors ... 'the district court has dismissed all claims over which it has original jurisdiction.'" *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (quoting 28 U.S.C. § 1367(c)). Given the Court's disposition of Plaintiffs' FLSA claims, it considers now whether it should continue to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Where all of the federal claims in an action have been dismissed, a court must consider whether continuing to exercise supplemental jurisdiction over any remaining state law claims "serves the interests of economy, convenience, fairness and comity." *Bray v. City of New York*, 356 F. Supp. 2d 277, 285 (S.D.N.Y. 2004) (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446-47 (2d Cir. 1998)); *see generally Chapman v. Crane Co.*, 694 Fed. Appx. 825, 828 (2d Cir. 2017) (summary order). Generally, if a court dismisses before trial all of the claims over which it has original jurisdiction, the balance of these factors will weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims. *See Kolari*

*v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Conversely, declining to exercise supplemental jurisdiction may disserve the relevant interests "when the dismissal of the federal claim occurs late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (internal quotation marks and citation omitted).  For that reason, there is a "particularly strong case for retaining jurisdiction ... [after a court] has not only spent considerable time dealing with the legal issues and becoming fully conversant with the facts but also has conducted a trial on the merits." *Id.* (internal quotation marks and citation omitted); *accord Short v. Manhattan Apartments, Inc.*, 916 F. Supp. 2d 375, 394 (S.D.N.Y. 2012) (collecting cases).

Applying the factors of judicial economy, convenience, fairness, and comity, this Court concludes that Plaintiffs' NYLL claims should not be dismissed on jurisdictional grounds at this late stage of the litigation.  These claims involve a straightforward application of the NYLL's overtime, wage notice, and wage statement provisions, rather than novel or complex issues of state law that would implicate concerns about comity.  *Cf. Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 395 (S.D.N.Y. 2013) ("Here, the relationship between the state and federal claims, the nature of the state law claims, and the pending companion case in state court all favor declining jurisdiction.  No federal claims remain in this case. And the remaining claims raise novel and complex issues of state law.").  Moreover, given that this Court has already conducted a trial on the merits, the factors of convenience and judicial economy weigh strongly in favor of this Court's continued exercise of supplemental jurisdiction.  *See, e.g., Marcelino v. 374 Food, Inc.*, No. 16-CV-6287 (KPF), 2018 WL 1517205, at *11 (S.D.N.Y. Mar. 27, 2018).  Accordingly, this Court will decide Plaintiffs' pendent state law claims.

**B. Findings of Fact and Conclusions of Law for Each Plaintiff**

*1. Shang Shing Chang*[5]

(a) Findings of Fact

This Court finds that Plaintiff Chang was employed as a daytime driver and trainer for

Defendants. *See* Chang Trial Tr. 194:10-11; 199:1-8 and 209:25-210:1. Besides completing his

own trips, Chang also worked on standby on some occasions to cover other drivers' work and also

trained various drivers as well. *Id.* at 199:22-24; 210:21-22; and 332:15-18.

This Court further finds that upon entering into employment with Defendants, Chang

signed a Driver Employment Agreement, which provided the following in relevant part. *See* ECF

228-4 [Driver Employment Agreement]. First, Paragraph 2 (emphasis added) provides that:

> 2. <u>Hours.</u> Daytime drivers shall work *five (5) days per week and be available*
> *during such days for eleven (11) hours, which shall include a mandatory unpaid*
> *one-hour break.* Nighttime Drivers may work at a schedule per their own
> discretion and shall not be eligible for any overtime compensation. All driving
> within the scope of employment shall be monitored and Company shall have
> the sole discretion in its analysis of monitoring records. Drivers who wish to
> dispute the calculation of hours worked must do so within one week of payment,
> in person and in writing.

Second, Paragraph 3(a) (emphasis added) provides that:

> 3. <u>Salary, Commission, and Expenses.</u> (a) Daytime Drivers shall be compensated
> with a base salary as follows: eighty dollars ($80) per day for Drivers
> performing a majority of jobs to or from adult daycare centers, and ninety
> dollars ($90) per day to Drivers performing a majority of jobs to or from
> medical offices, provided that such salary shall be prorated accordingly if
> Driver does not work the minimum required hours. All Drivers shall also be
> compensated an additional one dollar ($1) per each customer per each trip that
> is not paid through medical insurance, and two dollars ($2) per each customer
> per each trip that is paid through medical insurance. *Company hereby*
> *guarantees a minimum compensation of ninety six dollars ($96) per each day*
> *full day worked (increased to one hundred dollars ($100) as of October 1st*
> *2013)*, regardless of the kind of transportation jobs performed, and shall
> compensate the difference in the event that Driver's base salary with additional

---

[5] For ease of reference, Chang's trial testimony may be found in the transcripts dated April 5, 2023 and April 6, 2023.
*See* ECF 232-2 and 232-3 respectively.

trip compensations is less than such minimum amount.  In the event that Driver's weekly compensation is less than $7.25 per each hour worked, Company shall compensate the difference to Driver. . .

Regarding the above Agreement, Chang conceded that Defendants never forced or unduly influenced him to sign the Employment Agreement.  Trial Tr. at 226:20-23.  Hence, this Court finds that Chang "agreed to" the Employment Agreement's terms.  *Id.* at 228:11-18.  Moreover, Chang does not recall signing any other contract with Defendants.  *Id.* at 232:4-14.  This Court finds that there was no such other written agreement since neither party put forth any evidence of one.

With the above in mind, there are three relevant time periods to Chang's employment, which are broken down as follows.  From October 14, 2013 to December 29, 2013, Chang claims that he worked as a driver.  *See* Chang Decl. at ¶ 2, dated October 20, 2022, ECF 160-1.[6]  Chang also asserted that he worked no more than fifty-five (55) to fifty-seven and a half (57.5) hours per week during this period of time.  *Id.*  Chang claimed that he worked from 6:30am to 5:30pm or 6:00pm with two days off.  *Id.*; Trial Tr. 405-06.

Second, from December 30, 2013 until February 28, 2014, Chang's new employment title became "supervisor", which functionally consisted of Chang working as a *trainer* to other drivers. Chang Decl. at ¶ 4 and ¶ 16.  Chang "did not actually manage any drivers for Clean Air" and "never had the authority to hire, fire, schedule or otherwise discipline any employees."  *Id.* at ¶ 4 Chang provided that his "work schedule as a trainer/supervisor ran from 9:30am to 6:00pm."  *Id.* at ¶ 16.  "Two or three times per week, [Chang] would have to cover for a driver who could not work on that day" and "thus worked from 6:30am to 6:00pm in these instances."  *Id.*  During trial,

---

[6] Note, this is the most recent Chang Decl. so the Court will rely upon this one in the Court's analysis *infra*.

Chang testified that his working hours from this period totaled "approximately" fifty (50) hours per week.  Trial Tr. at 294:13-16; 308:10-21.

Third, from February 28, 2014 through October 24, 2014, Chang worked until 7:00pm four or five times per week, which Chang claims totals, at most, fifty-four (54) to sixty-two and a half (62.5) hours per week.  Chang Decl. at ¶ 16.  Despite Chang's testimony at trial that he worked "approximately" fifty hours in the second period in the paragraph above, Chang also asserted in his declaration that "on average" he "worked at least fifty-seven and a quarter (57.25) hours per week from December 30, 2013 to October 24, 2014.  *Id.*  Ultimately, this Court finds that Chang worked no more than 62.5 hours in a given week during either the second or third period, with this higher figure being in the minority.  In any event, the significance of this figure will be analyzed below after discussing Chang's rates of pay for the three periods.

Per the Employment Agreement quoted above, Chang was paid a fixed rate based upon a specified number of hours agreed upon beforehand, which varied with each time period.  Trial Tr. at 199:9-17.  Specifically for the first period (October 14, 2013 to December 29, 2013), while there were some variations from week-to-week, Chang's salary was between $500.00 to $720.00 per week during this period inclusive of overtime and bonuses.  *See, e.g.*, ECF 228-5 [Chang Paystubs] at pdf pages 6-7.  For the second period (December 30, 2013 until February 28, 2014), Chang's salary was between $634.62 per week and eventually became $1,538.46 biweekly.  *Id.* at pdf pages 13 and 16.  Finally, for the third period (February 28, 2014 through October 26, 2014)[7], Chang was paid $1,538.46 biweekly (though he only was paid $769.23 in his last payment period).  *Id.* at pdf pages 34-35.

---

[7]  Note, as discussed supra from the Chang Decl., Chang's last date of employment with Defendants was October 24, 2014, but the last day in the pay period reflected on the paystubs is October 26, 2014.  ECF 228-5 at pdf page 35.

As for a yearly salary calculation, Chang's salary at the beginning of his employment was $30,000 per year, which was later increased to $33,000 and eventually to $40,000 annually. Chang Trial Tr. at 311:1-2; 312:22; 313:10; 311:21-23; 312:10-11; and 320:16-20.

Notably, while Chang recorded his working hours on Working Sheets before he became a "supervisor," Chang *never complained or raised concerns* about any alleged inaccuracies or being "squeezed" for additional working hours on the timesheets he filled out.    *Id.* at 404:5-8. Furthermore, Chang's Working Sheets also bolster Defendants' position because they match Chang's hours paid even when the hours exceed forty (40) in a given week. For example, compare ECF 228-6 [Chang Working Sheets] at pdf page 6 for week of November 25, 2013 and Chang Payment Stubs at pdf page 48.[8]  Moreover, when Chang became a trainer/supervisor, he would "only record the time that [he] worked as a standby driver on the drivers logs. [He] would not record the start and end time of [his] workday during this period. [He] was not required to complete a weekly hours sheet while employed in this position." Chang Decl. ¶ 17. Thus, this Court can only rely upon the time sheets that are in the record, which favor Defendants' position.

Regarding Chang's meal breaks, this Court finds that Chang conceded that "on the days [Chang] didn't get a meal break there would be no way for the company to know [he] didn't get a meal break because [Chang] would put down some random number on the sheet." Chang Trial Tr. at 253:14-19. Moreover, Chang did not complain to anyone at the company that he was allegedly not able to take meal breaks on certain days. *Id.* at 253:20-255:19.[9] Furthermore, when

---

[8] This example was chosen because the timesheet clearly claims work for approximately 47.35 hours worked and Chang receives overtime for the 7.35 hours. To be clear, Defendants may have rounded down in their calculation but the time is approximately the same between the records. Moreover, this Court also notes for the lunchbreak analysis *infra* that on the Tuesday in this timesheet Chang wrote down a one hour and a half lunch break, which is a half hour *more* than the contract even allows. Finally, while several of the timesheets in evidence are more difficult to read, the records show overall that Plaintiff received overtime compensation for the hours he claimed that he worked.

[9] In fact, Chang effectively conceded that he is abandoning any claims about the meal breaks before he became a supervisor. Chang Trial Tr. at 255:13-19.

14

looking at a representative working sheet for Chang in ECF 228-6 at pdf page 6 for the week of November 25, 2013, it is clear that Chang routinely recorded lunchbreaks.

Finally, this Court finds that Defendants did not provide Chang with a wage notice. *Id.* at 198:8-21.

<u>(b) Conclusions of Law</u>

Here, this Court concludes that the Employment Agreement with Chang discussed above rebuts the presumption that Chang's salary only covered forty hours. Most importantly, when reviewing the calculations for each of Chang's three employment periods, even in the most favorable light to Chang based upon his own testimony and declaration, this Court concludes that Chang always received above the minimum wage and proper overtime. This shows that the Employment Agreement itself was entered into in good faith with a salary amount intended to cover overtime as well. Relevant for the present analysis, in 2013 the New York City minimum wage was $7.25 and in 2014 it was $8.00.[10]

Recall that for the first period (October 14, 2013 to December 29, 2013), Chang claims he worked fifty-five (55) to fifty-seven and a half (57.5) hours. $7.25 X 40 hours equals $290.00. For overtime, $7.25 X 1.5 equals $10.88 per each overtime hour worked. $10.88 X 17.5 hours worked equals $190.40. Finally, $290.00 + $190.40 = $480.40. Moreover, this higher calculation assumes that Chang worked 57.5 hours (40 regular hours plus the 17.5 overtime hours) instead of the fifty-fifty (55) hours already covered under the Employment Agreement. Either way, however, the evidence shows that Defendants acted in good faith here because Chang was *consistently* paid $500.00 per week which covers any overtime he alleges even under the elevated 57.5 figure.

---

[10] The New York City minimum wage yearly breakdown may be found here for ease of reference. https://comptroller.nyc.gov/reports/spotlight-minimum-wage/.

Hence, this Court finds that Chang's wage and overtime claims fails under both the FLSA and NYLL for the first period.

For the second period (December 30, 2013 until February 28, 2014), this Court reiterates that Chang conceded during cross-examination that he only worked "approximately" fifty (50) hours per week, which is within the fifty-five hour range discussed in the Employment Agreement. Chang Trial Tr. at 294:13-16; 308:10-21.[11]   Moreover, upon reviewing Chang's paystubs, this Court finds that Chang's salary was increased to $634.62 per week *or more* from December 30, 2013 through February 28, 2014, which satisfies both the FLSA and NYLL minimum wage and overtime requirements.  To illustrate, $8.00 (minimum wage) X 40 is $320.00.  1.5 (overtime rate) X $8.00 equals $12.00 per each overtime hour worked.  $12.00 X 17.50 hours additional hours equals $210.00.  Finally, $210.00 + $320.00 equals $530.00.  Once again, under cases like *Ochoa*, 2020 WL 9814092, at *6 and the precedent cited therein, the presumption that Chang's Employment Agreement did not cover overtime is rebutted.

Finally, for the third period (February 28, 2014 through October 24, 2014), this Court concludes that the same principles apply.  As discussed *supra*, the nuance here is that Chang was a trainer/supervisor during this entire period and he claims that he worked as much as 62.5 hours in at least some weeks.  Chang Decl. at ¶ 16.  However, the larger 62.5 hours figure does not result in a different conclusion from the Court's previous two periods discussed when doing the pertinent calculations.  Specifically, Chang was paid biweekly $1,538.46 during this period ($769.23 per week).  Under this framework, $8.00 X 40 hours equals $320.00.  1.5 X $8.00 equals $12.00 per each overtime hour worked. $12.00 X 22.5 hours equals $270.00 in overtime.  Finally, $320.00 +

---

[11] Note, it is not clear from this testimony if Chang also meant that he worked "approximately 50 hours" during the first period as well.  If that's the case, then that further undermines Chang's claim with respect to the first period since the Employment Agreement covers 55 hours anyway.

$270.00 equals $590.00.  Therefore, even when considering the 62.5 hour calculation, Chang was paid well-above minimum wage during the entire third period as well.

Next, regarding the lunchbreak issue, this Court also further concludes that Chang's admissions about writing incorrect times for meal breaks and not otherwise disputing his working sheets with Defendant Wang undermines his credibility.  Additionally, this Court also reviewed the testimony of Defendants' employee Fiona Roberts who authenticated business records and provided that Defendants' employees had the opportunity to fill out a time correction sheet for any alleged missed lunch breaks.  *See* Roberts Trial Tr. at 119:18-23, ECF 232-1.  Hence, this Court concludes that Defendants acted in good faith with respect to the meal break issue as well and the Court does not credit Plaintiff's testimony that the company somehow forced him to forego meal breaks.

Lastly, based upon this Court's above holdings, this Court can also quickly dispense of Chang's spread of hours and lack of wage notice and wage statement claims.  First, the spread of hours claim fails because Chang always earned above the minimum wage.  Second, the wage notices and wage statements claims also fail because Chang received complete payment of all wages due.

In short, this Court concludes that the overall tenor of Chang's testimony is that he felt that he should have received higher pay. But such a personal dissatisfaction with his salary, without more, does not equate to a viable FLSA or NYLL claim, particularly where the terms of employment were specifically laid out in writing and agreed to, the hours worked were carefully tracked and verified by the employee himself, and the undisputed records show that when Plaintiff did submit time sheets indicating some overtime work he was properly paid for those additional hours.  A similar theme of former employees attempting to force their generalized unhappiness

17

with their rate of pay into an FLSA or NYLL claim carries throughout the trial testimony in this case, with multiple Plaintiffs similarly expressing dissatisfaction with how much they were paid but failing to establish by a preponderance of the evidence that any actual violations of the FLSA or NYLL occurred.  For the reasons discussed above, this Court concludes that Chang is not entitled to any relief under the FLSA or NYLL.

   *2. Zhe Zhao* ("Zhao")[12]

   (a) Findings of Fact

   This Court finds that Zhe Zhao was employed by Defendants as a driver from around November 1, 2013 until around January 2016.  *See* Zhao Decl. at ¶ 1, dated July 10, 2017, ECF 229-10.[13]

   On October 31, 2013, Zhao entered into an Employment Agreement with Defendants that contained identical relevant provisions already discussed for Chang.  Hence, this Court will not repeat the provisions in full here, but will reiterate that Zhao was expected to be available eleven (11) hours per day for 5 days per week, including the nonpaid one (1) hour break each day.  *See* ECF 229-7 [Zhao Employment Agreement].  Zhao testified at trial that he understood the content of the Employment Agreement/contract when he signed it after someone explained it to him and that he agreed with the terms.  Zhao Trial Tr. at 65:6-20.

   Zhao claims that during his employment, he generally began work around 6:00am and finished around 6:00pm.  *Id.* at ¶ 2.  Most importantly, the Zhao Decl. at ¶ 5 claims that: "[s]tarting around May 2014, [Zhao] was paid an hourly rate of $9.37" plus "overtime premiums."  "However, [Zhao allegedly] was repeatedly told that [he] was not allowed to record more than ten hours per

---

[12] For ease of reference, Zhao's testimony is available at ECF 232-4.
[13] To the extent there is any uncertainty about Zhao's specific dates of employment or minor variations with the Decl. in trial testimony, this does not impact the Court's analysis when calculating Zhao's overtime or hours worked.

day or 50 hours per week." *Id.* "Thus, [Zhao] would generally only record fifty hours per week, despite working around sixty hours per week to avoid being reprimanded." *Id.* Zhao reiterated this claim during his trial testimony as well, though he clarified he did not mean "exactly" fifty (50) hours. *See* Zhao Trial Tr. at 80:11-23; 82:11-20. After reviewing the Zhao Decl., Zhao's trial testimony and the record as a whole, this Court finds that Zhao's claim with respect to hours worked is not credible for the reasons discussed below.

On March 31, 2014, Zhao was issued written notice regarding his salary compensation, which provided that he would receive $9.37 per hour for driving and $8.00 per hour training. *See* ECF 229-8 [Notice]. With the rates in mind, the Court will now turn to Zhao's paystubs.

Notably, a plethora of Zhao's paystubs in the record directly refute the claim that after May 2014 he was only compensated for 50 hours. For just three representative examples, see the following: (1) in the pay period of 05/12/2014 through 05/18/2014, Zhao was compensated for 57.30 hours, *see* ECF 229-9 [Zhao Paystubs] at pdf page 26; (2) in the pay period from 06/02/2014 through 06/08/2014, Zhao was compensated for 59.24 hours, *see id.* at pdf page 29; (3) in the pay period from 10/13/2014 through 10/19/2014, Zhao was compensated for 57.42 hours, *see id.* at pdf page 47. Moreover, Zhao always received overtime premiums for additional hours worked over forty hours, as reflected in the paystubs discussed above, which significantly undermines the credibility of his testimony that he was not allowed to record more than ten hours per day or 50 hours per week. *Id.*

Finally, this Court also finds Zhao is not credible regarding the lunchbreak issue either. Zhou claims that he wrote down lunchbreak times even when he did not receive an actual lunch break because he feared that he would be terminated from his job or otherwise warned, but provided no evidence of actually having received such a warning or any basis for believing he

would be terminated for properly recording his working hours. Zhao Trial Tr. at 105:4-12. Notably, Zhou conceded that Defendants would have no way to know that Zhou was not receiving lunchbreaks if he failed to indicate the lack of lunchbreaks on his time sheets. *Id.* at 113:22-25. Moreover, there is no evidence Zhao ever filled out a time correction sheet regarding lunch breaks even though all employees had the opportunity to do so. Roberts Trial Tr. at 119:18-23, ECF 232-1. In short, Zhao's testimony that his timesheets and pay were inaccurate because some unidentified person at the company forced him to only record 10 hours per day and 50 hours per week is inconsistent with the record.

(b) Conclusions of Law

This Court reincorporates its analysis *supra* regarding Chang and reaches the same conclusions of law. Specifically, Defendants rebutted the presumption that Zhou's contract was only for forty (40) hours per week and did not include overtime. Zhao worked around fifty-five (55) hours per week and when he worked longer (i.e. 59.24), Zhao received proper overtime. Once again, because this Court also does not find Zhou credible about the lunchbreak issue, the lunchbreak hour does not alter this Court's overtime conclusions either.

Likewise, Zhou's spread of hours and wage notice and wage statements claims also fail as a matter of law given that Zhou earned above minimum wage and all the evidence shows Defendants paid Zhou his complete wages due. Thus, Zhou is not entitled to any relief either.

3. *Duke Lee[14]*

(a) Findings of Fact

This Court finds that Duke Lee was employed by Defendants from around June 2014 to January 13, 2016. *See* Duke Lee Decl., at ¶ 1, ECF 160-3. Lee's direct supervisor during his

---

[14] For ease of reference, Lee's trial testimony may be found at ECF 232-1.

employment was Jerry Durante.  *Id.* at ¶ 14.  Lee claims that he "was terminated in January 2016 because [he] was asked to repaint the entire garage over a weekend, without any additional pay and [he] refused to do so." *Id.* at ¶ 13.

Lee further claims that from around June 2014 to around February 1, 2015, Lee worked as a maintenance worker.  *Id.* at ¶ 2.  Lee's primary tasks performed included: "taking cars to the repair ship for oil changes, inspections, repairs, etc., going to the DMV to re-register Clean Air's vehicles, and parking cars in the garage." *Id.* at ¶ 7.  Additionally, Lee asserts that "he was required to wash the company's vehicles, typically on weekends" and that he "was also required on occasion to transport equipment and office furniture." *Id.* at ¶ 8.

Lee also asserts that from around June 2014 through around February 1, 2015 he worked five days per week.  *Id.* at ¶ 4.  Lee states that his hours were generally from 6:00am to 4:00pm, meaning he worked approximately fifty (50) hours per week.  *Id.*  Lee claims that he was paid an hourly rate of $11.00 during this period.  *Id.* at ¶ 3.  Additionally, Lee further asserts that "he was required to record a thirty-minute break each workday, despite frequently not being able to take one." *Id.* at ¶ 6.[15]  Importantly, for the timeframe before May 8, 2015, the Paystubs show that Lee was consistently awarded overtime.  *See generally* ECF 229-2 [Duke Lee Paystubs].

After the first nine months of Lee's employment, from around May 8, 2015 until the end of Lee's employment, he claims that Defendants paid him a fixed weekly salary of $730.78.  *Id.* at ¶ 9.  Lee further asserts that, despite the change in his salary, his duties largely remained the same except for the fact that in addition to his primary duties he "was required to work in the office about 2-3 hours each day." *Id.* at ¶ 10.  "Within the office [he] would pay parking tickets online, maintain a spreadsheet which contained the maintenance history of the company's vehicles, and

---

[15] Note, unlike other Plaintiffs discussed *supra*, Lee does not have timesheets for the Court to review, but the Payment Stubs are sufficient for this Court to find that Lee's claims are not credible as discussed *infra*.

clean and organize the inside of the office." *Id.* Lee never had the authority to supervise other employees' work and was not involved in the hiring or termination of any employees. *Id.* at ¶ 12.

Lee further states that once his hours were changed from hourly to salary, he worked six days per week. *Id.* at ¶ 11. "On Monday through Friday [Lee] would start work around 9:00am and would finish work at the end of the day between 6:00pm and 7:00pm." *Id.* Lee "would usually take a lunch break that lasted approximately twenty minutes each day." *Id.* Moreover, on Saturdays Lee "would typically work from 9:00am to 3:00pm." *Id.* Thus, Lee's hours "ranged from fifty-one (51) to fifty-six (56) hours per week." *Id.*[16] Perhaps most notably, Lee asserts that he never received any overtime during the period in which he received a fixed salary. *Id.* at ¶ 15.

After reviewing the pertinent exhibits, this Court finds that Lee received sufficient payment to cover overtime even from May 2015 for the reasons discussed below.

First, regarding Lee's change in employment position for Defendants, this Court finds that Lee knowingly agreed to and understood the terms of his Employment Offer. *See* Lee Trial Tr. at 68:6-22. This testimony refers to the Employment Offer that Lee signed on May 18, 2015. ECF 229-3 [Employment Offer]. Under this Employment Offer, Lee agreed to work from 9:00am-7:00pm Monday through Friday and Saturday from 9:00am-5:00pm or Sunday from 10:00am-4:00pm for an annual salary of $38,000. *Id.*[17]

Glaringly, despite the plain terms of the Employment Offer noted above, Lee conceded that during this period from May 8, 2015 while he generally worked the hours agreed to, sometimes he only worked until 3:00pm on Saturdays, which is about two hours *less* than what the Agreement

---

[16] This Court also finds after reviewing the Lee Trial Tr. at 61:14-23 and ECF 229-1 [Termination Agreement] that Lee did not do any work for Defendants between March 20, 2015 and April 1, 2015.

[17] This Court specifically finds that Lee's testimony was not credible based upon Lee Trial Tr. 68:6-22 where Lee conflated not "agreeing" to a contract that he signed and personally feeling his salary was too low. This again shows the Plaintiffs' theme of trying to force the facts of this case into a FLSA and/or NYLL claim after disliking the contractual terms they willingly agreed to.

required.  *See* Lee Trial Tr. 75:16-25; *see also id.* at 76:1-14 (reiterating that Lee agreed to terms of the Agreement and $38,000 yearly salary specifically).  Hence, the fact that Lee worked *less* than required on Saturdays suggests that Defendants were not exploiting Lee for extra hours.

Separately, regarding the lunch break issue, this Court finds based upon the Lee Trial Tr. at 100:9-20 and 102:18-103:5 that there is no evidence anyone ever told Lee that he could not take a lunch break.  While Lee allegedly did tell his supervisor, Jerry Devante, about the lack of time for lunchbreaks on one occasion, *see* 104:24-105:13, Lee states that Devante left the Company around that time and there was no ultimate resolve.  However, there is again no evidence that Durante (or anyone else) *prevented* Lee from taking a lunchbreak.[18]

(b) Conclusions of Law

This Court reincorporates its analysis *supra* regarding Chang and reaches the same conclusions of law.  Specifically, Defendants rebutted the presumption that Lee's Agreement from May 8, 2015 was only for forty (40) hours per week.  Recall that Lee concedes that he was paid $730.78 per week during this period in which he worked 51 to 56 hours.  Besides the fact that Lee's testimony suggests that, if anything, Lee frequently worked *two hours less* than the Agreement required, this Court concludes that even with 56 hours Lee received sufficient overtime under his salary.  The pertinent math is as follows: $8.75[19] X 40 hours equals $350.00.  $8.00 X 1.5 equals $13.13 per each overtime hour worked.  $13.13 X the extra 16 hours allegedly worked is $210.08.  Finally, $350.00 + $210.08 equals $560.08 (i.e. substantially lower than $730.78).

---

[18] The Court further notes that Lee claims he did not have a lunchbreak "about" two times a week.  *See* Lee Trial Tr. at 110:20-25.  However, Lee cannot remember which days this allegedly occurred and only "thinks" this is the amount of occasions he was not eating lunch.  Given that there is no documentary evidence to support this assertion, this Court finds little credibility to this testimony as well.  Moreover, per Fiona Roberts' testimony, Lee had the opportunity to fill out a time correction sheet for any alleged missed lunch breaks and failed to do so.  *See* Roberts Trial Tr. at 119:18-23.

[19] The New York City minimum wage was $8.75 in 2015.  *See* https://comptroller.nyc.gov/reports/spotlight-minimum-wage/.

Thus, Lee is not entitled to any overtime for the period after May 8, 2015.

Regarding the period prior to May 8, 2015, this Court concludes that Lee is not entitled to any overtime for this timeframe either. Recall that Lee earned $11.00 per hour. *See, e.g.*, ECF 229-2 at pdf page 7 (pay period of 08/11/2014-08/17/2014). Importantly, as noted above, Lee's paystubs show that he received overtime at a time and a half rate when he worked above forty (40) hours during this period before May 8, 2015. *Id.* Thus, the evidence suggests that Lee received all wages due during this period as well.

Next, regarding Lee's lunchbreaks, this Court concludes that, like the other Plaintiffs discussed *supra*, since Lee was never told not to record a lunch break and Defendants had no way to know Lee did not record lunchbreaks, Lee is not entitled to any relief regarding this issue either.

Finally, like the other Plaintiffs discussed *supra*, Lee's spread of hours and wage notice and wage statements claims also fail as a matter of law given that Lee earned above minimum wage and all the evidence shows that Defendants paid Lee his complete wages due.

### 4. Ya Xu[20]

#### (a) Findings of Fact

This Court finds that Ya Xu was employed by Defendants from March 9, 2015 to July 02, 2015. *See* Ya Xu Decl., dated December 28, 2015; at ¶ 1; ECF 231-1. She claims that she worked as an inspector, then as a dispatcher and finally as a driver. *Id.* at ¶ 2. The three relevant time periods and alleged hours worked are discussed in the paragraphs below. Before discussing the time periods, however, this Court notes that Ya Xu's compensation was calculated at an hourly rate of $9.37 from March 9, 2015 through the end of April of 2015, which was raised to $11.00 until the end of June 2015 and then reverted back to $9.37. *Id.* at ¶ 6; ECF 231-2 [Ya Xu Payrate

---

[20] Note, for ease of reference Ya Xu's transcript can be found at ECF 232-7 and ECF 232-8.

Changes].  Ya Xu claims that she "was not paid overtime compensation for all hours worked in excess of forty (40) hours per week." *Id.* at ¶ 7.

First, Ya Xu claims that she worked at least (18) hours per week as an inspector from March 9, 2015 to April 12, 2015. *Id.* at ¶ 3.  Upon reviewing the Payment Stubs available for that period, this Court agrees that some weeks she worked this amount, but also concludes that Ya Xu received the compensation she was entitled to during that period, which did not include overtime since it was only around eighteen (18) hours per week or slightly higher.  *See, e.g.*, ECF 231-4 [Ya Xu Paystubs] at pdf page 1.[21]  In other weeks during this period, Ya Xu worked as little as 5.63 hours per week.  *See id.* at pdf page 2.

Second, Ya Xu claims that she worked at least fifty-three (53) hours per week as a dispatcher from April 13, 2015 to on or about June 6, 2015.  Ya Xu Decl. at ¶ 4.  Here, this Court believes based upon the records available that Ya Xu's claim is not credible.  From April 12, 2015 through April 17, 2015, the Payment Stubs show 5.67 hours worked.  ECF 231-4 at pdf page 4. Fast forwarding to May 10, 2015 through May 14, 2015, the Payment Stubs only show 38.65 hours worked, which is still substantially below the amount that Ya Xu is claiming.  From May 17, 2015 to May 21, 2015, the Payment Stubs only show 40.8 hours.  ECF 231-4 at pdf page 8.  There is simply no reason to doubt the paystubs based upon Ya Xu's testimony especially since some weeks record over 40 hours, for which Xu was properly paid overtime.  Additionally, it defies logic and common sense to this Court that an employee would continue working for a Company that was allegedly failing to pay them for nearly 20 extra hours per week yet fail to make even a single complaint or documented request for this missing pay.  For that reason, and the general lack of any

---

[21]Note, to the extent 13.3 of the hours recorded on ECF 231-4 were only compensated at $9.00 instead of the $9.37 for some reason, this does not alter the Court's Findings of Fact because the total amount of hours worked was 20.29 so either way there is no overtime to calculate.  Moreover, $9.00 and $9.37 are both above the 2015 minimum age.

corroboration for Xu's testimony, this Court does not find Ya Xu's declaration credible with respect to this period.

Notably, during trial Ya Xu claimed that she was told to clock out and then do additional work for "at least one hour" and "sometimes two" or more on some occasions. *See* Ya Xu Trial Tr. at 90:12-19. Again, given the disparity in hours and Payment Stubs from the Ya Xu declaration discussed above, this Court does not find Ya Xu's testimony credible. Moreover, Ya Xu did not even attempt during cross-examination to quantify a range of how many hours Defendants owed her when she worked as a dispatcher. *Id.* at 95:5-10.[22]

Third, Ya Xu claims that she worked at least fifty-seven and a half (57.50) hours per week as a driver from June 7, 2015 to July 2, 2015. Ya Xu Decl. at ¶ 5. Reincorporating the above testimony regarding Ya Xu's claims about clocking out and reviewing the pertinent Payment Stubs, this Court, once again, finds the assertion about 57.50 hours per week is not credible. From June 8, 2015 to June 14, 2015, the Payment Stubs show 42.5 hours worked. *See* ECF 231-4 at pdf page 12. Next, from June 22, 2015 through June 28, 2015, 52.43 hours is recorded. *Id.* at pdf page 13. Again, given the contrast between multiple weeks and the 57.50 hours figure, this Court does not find Ya Xu's overtime claims credible.

Finally, Ya Xu claims that she did not have a lunchbreak during the workday, but was required to still record a half-hour break. *Id.* at ¶ 9. However, this Court does not find Ya Xu's trial testimony credible on this issue either. *See* Ya Xu Trial Tr. at 95:5-10. This Court's finding here is also bolstered because, as discussed *supra* with the other Plaintiffs, per the testimony of Defendants' employee Fiona Roberts, employees had the opportunity to fill out a time correction

---

[22] This Court also finds that to the extent there is any dispute about whether Ya Xu, in fact, worked as a dispatcher or an inspector (contrary to her declaration) during this period, this would not impact the Court's Findings of Fact regarding Ya Xu's number of hours worked and her credibility anyway.

sheet for any alleged missed lunchbreaks. *See* Roberts Trial Tr. at 119:18-23, ECF 232-1. However, Ya Xu provided no trial testimony that she ever attempted to fill out any such corrections.

### (b) Conclusions of Law

This Court concludes that Ya Xu is not entitled to any overtime under the FLSA and NYLL and that she was always paid above minimum wage for all hours worked. Regarding the lunchbreak issue, given the lack of evidence that Ya Xu ever tried to correct her records, plus the lack of credibility in her testimony concerning the numbers of her working hours as a whole, this Court concludes that the lunchbreak issue does not bolster her FLSA or NYLL claims either.

Finally, like the other Plaintiffs discussed *supra*, Ya Xu's spread of hours and wage notice and wage statements claims also fail as a matter of law given that Ya Xu earned above minimum wage and all the evidence shows that Defendants paid Ya Xu her complete wages due.

### 5. *Lu Yang*[23]

### (a) Findings of Fact

This Court finds that Lu Yang was employed by Defendants as a driver from June 23, 2014 to around January 2016. *See* Lu Yang Decl, dated October 21, 2022 at ¶ 1, ECF 160-5; ECF 228-8 [Lu Yang Employment Agreement, dated June 23, 2014].[24]

This Court further finds that while Yang was employed by Defendants, he received an hourly rate of $9.37 and that the hourly rate was increased to $10.72 on November 27, 2015. *Id.* at ¶ 2; ECF 228-11 [Lu Yang Paystubs] at pdf page 74.[25] Yang further concedes that he was paid

---

[23] For ease of reference, Lu Yang's trial testimony may be found at ECF 232-5 and ECF 232-6.

[24] Note, while the Yang Decl. states that Yang's start date was June 22, 2014, this Court will defer to the actual Employment Agreement start date of June 23, 2014 noted above.

[25] Note, while the Yang Decl. at ¶ 2 states November 16, 2015 as the date for the salary increase, the first Paystub the Court sees in the record with the $10.72 hourly rate increase is dated November 27, 2015. ECF 228-11 [Lu Yang Paystubs] at pdf page 74. Finally, this Court also notes that some paystubs have a $10.00 rate. *See id.* at pdf page 79. However, given that $10.00 is still above minimum wage, this amount does not alter any of the Court's Findings of Fact or Conclusions of Law for Lu Yang.

overtime equal to 1.5 times his hourly rate for work performed in excess of forty hours worked. *Id.* at ¶ 2.

Yang asserts that he worked 10-12 hours per day. *Id.* at ¶ 4. Notably, Yang asserts that at Clean Air drivers were not allowed to record more than ten hours per day. "If a driver recorded more than ten hours they would not be paid for that time, and would be reprimanded and told to record less time." *Id.* at ¶ 3. However, this Court finds that Yang's signed Employment Agreement directly contradicts this assertion in Paragraph 2, which provides that Wang, as a Daytime Driver, "shall work five (5) days per week and be available during such days for eleven (11) hours, which shall include a mandatory unpaid one-hour break." *See* ECF 228-8 [Lu Yang Employment Agreement, dated June 23, 2014]. Furthermore, this Court finds that Yang's assertion regarding the ten hours per day is directly contradicted by his paystubs in which he received overtime for all hours worked, including weeks over fifty hours. *See, e.g.*, ECF 228-11 [Paystubs] at pdf pages 8, 12-13, 15, 39, 62 and 78; *see also* Lu Yang Trial Tr. at 15:1-24; 32:10-13. Additionally, the Lang Decl. at ¶ 8 provides that before Lang left Clean Air he declined to comment if his own driver logs were even accurate.

Yang also claims that he was required to record a break of between 30 minutes and one hour per day, despite not taking a break on numerous days. *Id.* at ¶¶ 5-7. However, after reviewing Yang's testimony in full, this Court also finds that Yang never claimed that anyone *told* him not to take a lunch break. Moreover, this Court also finds that Yang did not fill out any corrections about not taking a lunch break, despite all employees having the opportunity to do so. *See* Roberts Trial Tr. at 119:18-23. Relatedly, this Court further notes that Yang's credibility regarding the lunchbreak issue is further undermined since Yang conceded a trainer who trained him did not tell Yang to falsely record lunchbreaks. Lu Yang Trial Tr. at 34:14-25. In fact, Yang provided no

evidence that the Company ever had such a policy.

(b) Conclusions of Law

This Court reincorporates its analysis *supra* regarding Chang and reaches the same conclusions of law.  Specifically, Defendants rebutted the presumption that Yang's contract was only for forty (40) hours per week and did not include overtime.  While Yang frequently worked above fifty hours as discussed above, he *consistently* received sufficient overtime contrary to Yang's assertions otherwise.  Moreover, the lunchbreak issue does not alter this Court's analysis here given the credibility issues that Yang knowingly provided false information on the working sheets, could not quantify even an approximation of how many lunchbreaks he allegedly missed and never made any attempts to correct the supposedly erroneous working sheets that were kept. *See* ECF 228-12.

Likewise, Yang's spread of hours and wage notice and wage statements claims also fail as a matter of law given that Yang earned above minimum wage and all the evidence shows Defendants paid Yang his complete wages due.  Thus, Yang is not entitled to any relief.

*6. Xiao Xi Xie*[26]

(a) Findings of Fact

This Court finds that Xiao Xi Xie was employed by Defendants from March 3, 2014 until May 1, 2015.  *See* Xiao Xi Xie Decl., dated October 20, 2022, at ¶ 1, ECF 160-4.

From the outset, this Court finds that Xie signed the same Driver Employment Agreement discussed *supra* providing that Xie will work five (5) days per week and be available eleven (11) hours each day with a mandatory one-hour break.  ECF 230-9 [Driver Employment Agreement].

Xie claimed his employment periods with Defendants were as follows:

---

[26] For ease of reference, Xiao Xi Xie's transcript is available at ECF 232-4.

From March 3, 2014 to June 10, 2014, Xie claimed that he worked as a driver and that his workday ran from 6:00am until 7:30pm each day with two days off each week. *Id.* at ¶ 2. He further states that two or three times per week, he worked extended hours from 6:00am to 9:30pm. *Id.* Finally, Xie claims that he worked between sixty-five and a half (65.5) to sixty-nine and a half (69.5) hours each week. *Id.* However, this Court finds that Xie's claim is not credible based upon the records in evidence. Indeed, *none* of the paystubs from this period show this figure/range of 65.5 to 69.5 hours. See ECF 230-12 [Paystubs]. Moreover, the working sheets from this period match the number of hours Xie requested even when the number is over fifty (50) hours worked. *Compare e.g.*, ECF 230-13 [Xie Working Sheets 1] at pdf page 41 with ECF 230-12 [Paystubs] at pdf page 6 (58.45 hours for April 7, 2014-April 13, 2014).[27] This Court finds that the corroboration from the timesheets further bolsters Defendants' position.

Next, Xie claims that he worked as an administrative assistant from June 11 to July 5, 2014, and that his workday ran from 9:30am until 8:30pm each day, with one and a half-day off each week. *Id.* at ¶ 3. He claims that he worked approximately sixty and a half (60.5) hours per week. *Id.*[28] However, this Court finds that Xie's assertion here is not credible for multiple reasons. First, for the paystubs the Court has from this period, hour breakdowns with overtime show 57.31 hours from June 9, 2014 through June 15, 2014 and 55.03 hours from June 16, 2014 through June 22, 2014. ECF 230-12 [Xie Paystubs] at 15-16. Even just this small sampling shows less hours than Xie alleges, and the Court reiterates that Xie consistently received overtime based upon the records

---

[27] This Court notes that there may be a minor discrepancy based upon how the figures are rounded in the calculation, but the hours are approximately the same when factoring in the lunchbreaks and show a good faith attempt by Defendants to pay all wages and overtime due.

[28] This Court notes that Xie conceded during cross-examination and the Court's questioning that these dates were incorrect, see Xie Trial Tr. at 28:23-29:2, but that does not alter the Court's analysis anyway since there is no dispute that he worked in the Company office for about a month. Xie Trial Tr. at 30:14-20.

available.[29]

Subsequently, from July 6, 2014 to May 1, 2015, Xie claims that he worked as a driver and that his workday ran from 6:30am to 5:30pm each day with two days off each week.  He allegedly worked fifty-two and a half (52.5) hours per week during this period.  *Id.* at ¶ 5.  Based upon the Driver Employment Agreement discussed above, this Court finds that his period falls within the fifty-five (55) hours covered in the Agreement.[30]

Xie also claims that he was not allowed to take a full 30-minute lunchbreak during the relevant periods that he worked as a driver.  *Id.* at ¶ 7.  However, after reviewing Xie's testimony in full, this Court also finds that Xie could not definitively recall any specific individual that *told* him not to take a lunch break.  Relatedly, Xie admitted that he "did not know" if anyone "got disciplined if they put the correct and true lunchtime" that they took.  Xie Trial Tr. at 49:9-11.  Moreover, this Court also finds that Xie conceded that during the time he worked as an administrative assistant, he had "no problem" taking a full 30-minute lunch break.  Xie Trial Tr. at 40:18-21.  Finally, this Court also finds that Xie did not fill out any corrections about not taking a lunch break, despite all employees having the opportunity to do so.  *See* Roberts Trial Tr. at 119:18-23.

## (b) Conclusions of Law

This Court reincorporates its analysis *supra* regarding Chang and reaches the same conclusions of law.  Specifically, Defendants rebutted the presumption that Xie's contract as a driver was only for forty (40) hours per week and showed that the fifty-five (55) hours included

---

[29] Furthermore, regarding hourly rates, Xie claims that from June 11, 2014 to June 19, 2014 he was compensated at an hourly rate of $9.37 and from June 20, 2014 to July 5, 2014 he was compensated at an hourly rate of $12.00.  *Id.* at ¶ 4.  Hence, this Court finds that Xie consistently received above minimum wage.

[30] To the extent there is any error in the exact dates Xie provided for each rate, that does not impact the Court's analysis regarding the Court's credibility concerns about the *number* of hours that Xie worked.

overtime.  To the extent Xie claims additional overtime for hours allegedly not recorded in *any* of his jobs/roles for Defendants, this Court finds those claims are not credible based upon the documentary evidence discussed above showing that Xie consistently submitted time sheets indicating hours worked above 40 and received proper overtime for all of those hours. Moreover, the lunchbreak issue does not alter this Court's analysis here given the credibility issues discussed above as well.

Finally, Xie's spread of hours and wage notice and wage statements claims also fail as a matter of law given that Xie earned above minimum wage and all the evidence shows Defendants paid Xie his complete wages due.  Thus, Xie is not entitled to any relief either.

7.  *Yong Jun Chao*[31]

(a)  <u>Findings of Fact</u>

This Court finds that Yong Jun Chao was employed by Defendants as a driver from around December 2013 through February 2015.  *See* Yong Jun Chao Decl., dated November 7, 2022, at ¶ 1, ECF 171.

Chao asserts that he was paid an hourly rate of around $8.00 throughout his employment. *Id.* at ¶ 2.  However, this Court finds that Plaintiff's claim is not credible here because from at least March 31, 2014, the paystubs show that Chao received a minimum wage of $9.37 per hour.  ECF 230-4 [Paystubs] at pdf page 5; *see also* Chao Trial Tr. at 63:17-23.

Chao was required to log his hours in writing while he worked at Clean Air I.  *Id.* at ¶ 3. Importantly, Chao signed a Driver Employment Agreement on April 25, 2016, specifying in Paragraph 2 that "Daytime Drivers shall work five (5) days per week and be available during such days for eleven (11) hours, which shall include a mandatory unpaid one-hour break."  ECF 230-1

---

[31] Note, for ease of reference Yong Jun Chao's transcript may be found at ECF 232-6.

[Driver Employment Agreement].

Chao claims that he "would generally work around sixty hours per week or around twelve hours per day, five days per week." *Id.* at ¶ 11. Chao further asserts that he usually worked "from 6am to around 6:00pm from Friday to Tuesday." Moreover, Chao states that "[e]arly in [his] employment [he] was instructed by a female employee in the human resources department that [he] was not permitted to record more than fifty hours per week, even if [he] worked more." *Id.* at ¶ 12. Similarly, Chao also claims that: "[e]arly in his employment even if [he] entered more than fifty hours, [he] would only be paid for fifty hours of work. [He] was reprimanded for recording too many hours and was told to only record about ten hours per day, for a total of fifty hours. Fearing losing [his] job, [he] complied and logged only fifty hours per week." *Id.* at ¶ 14.

This Court finds that Chao's claims once again lack credibility and are directly refuted by the evidence in the record. For example, the Paystubs show that for the payment period of April 14, 2024 through April 20, 2014, he was paid for 51.50 hours (inclusive of overtime). *See* ECF 230-4 at pdf page 3; *see also* Chao Trial Tr. at 73:18-74:2. The timesheets also corroborate that Chao himself only claimed 51.5 hours for that week (when subtracting the lunchbreaks as discussed below). ECF 230-5 at pdf page 1 [Jun working Sheets].[32] Consistent with the theme of other Plaintiffs discussed *supra*, Plaintiff's real complaint appears to be that he *felt he deserved* higher pay rather than not actually being paid overtime.

Finally, Chao claims that he was told early on in his employment that he was required to log a one-hour break each day. *Id.* at ¶¶ 5 and 9. However, Chao claims it was impossible to take breaks for over 10 to 15 minutes because of the amount of consecutive trips he was required to perform. *Id.* at ¶ 6. Chao further asserts that he repeatedly complained about being required to

---

[32] Depending on how Defendants rounded the hours in the timesheet, the total is approximately the same as the 51.50 hours that Chao was paid for. Hence, this further bolsters Defendants' credibility.

record a one-hour break to someone named Ms. Lin from human resources and that his wages were insufficient. *Id.* at ¶ 10. Despite these claims, however, the working sheets show that Chao recorded a *half hour* lunchbreak, which was the record the Company relied upon when calculating Chao's pay. *See, e.g.*, ECF 230-5 [Chao Working Sheets] at 1. Moreover, Chao testified that he wanted to perform "better" at his job so he spent time a longer time speaking to customers on the phone rather than taking a lunch break. Chao Trial Tr. at 81:12-22. Finally, this Court also finds that Chao did not fill out any corrections about not taking a lunch break, despite all employees having the opportunity to do so. *See* Roberts Trial Tr. at 119:18-23.

(b) <u>Conclusions of Law</u>

This Court reincorporates its analysis *supra* regarding Chang and reaches the same conclusions of law. Specifically, Defendants rebutted the presumption that Chao's Agreement from April 25, 2010 was only for forty (40) hours per week since fifty-five (55) hours was explicitly stated. Moreover, the Time Sheet and Pay Stubs discussed *supra* confirms that when Chao worked overtime he was properly compensated. Thus, the evidence shows that Chao is not entitled to any additional overtime or wages.

Next, regarding Chao's lunchbreaks, this Court concludes that, like the other Plaintiffs discussed *supra*, since Chao falsely recorded lunchbreaks that he now denies having, no recovery should be awarded here.

Finally, like the other Plaintiffs discussed *supra*, Chao's spread of hours and wage notice and wage statements claims also fail as a matter of law given that Chao earned above minimum wage and all the evidence shows that Defendants paid Chao his complete wages due.[33]

---

[33] Recall that while Chao stated that he started at $8.00 per hour, from at least March 31, 2014 the paystubs show that Chao received a minimum wage of $9.37 per hour, plus Chao always received sufficient overtime. Hence, Chao does not have a viable spread of hours claim here.

8. *Bin Yang*[34]

(a) Findings of Fact

This Court finds that Bin Yang was employed by Defendants from December 1, 2013 to March 3, 2015 as a driver.  *See* Bin Yang Decl., dated December 29, 2015 at ¶¶ 1-2; ECF 231-21. This Court further finds that on December 11, 2013, Bin Yang entered into a written Driver Employment Agreement with Defendants which provided in relevant part in Paragraph 2 that he would work five (5) days per week and be available for eleven (11) hours each day, which shall include a mandatory unpaid one-hour break.  *See* ECF 231-11 at pdf page 1.

Bin Yang claims that from December 1, 2013 through March 31, 2014 he worked five days per week. *Id.* at ¶ 3.  He further claims that his workday ran from 6:30am to 5:30pm and that he worked between fifty-five (55) and sixty (60) hours per week. *Id.*  He asserts that he was paid $90 per day during this period. *Id.*

Additionally, Bin Yang claims that, from April 1, 2014 through October 31, 2014, he worked five days per week from 6:30am to 5:30pm for fifty-five (55) and sixty (60) hours per week. *Id.* at ¶ 4.  He claims that he was paid $110.00 per day during this period. *Id.*

Next, Bin Yang claims that from November 1, 2014 to March 3, 2015, he worked five days per week from 6:30am to 6:30pm per day. *Id.* at ¶ 5.  He claims that he worked sixty (60) hours per week during this period and that he was paid $9.37 per hour. *Id.*[35]

Notably, Bin Yang further asserts that he was not paid minimum wages or overtime compensation for all hours worked in excess of forty (40) hours per week. *Id.* at ¶ 6.  He further

---

[34] Note, per the Yang Trial Tr. at 15-18, ECF 232-1, Bin Yang is deceased and his son, Huai Lu Yang is bringing the present claims on his behalf (assuming he is appointed as executor by the Surrogate Court).  However, as discussed *infra*, this Court finds that Bin Yang's claims fail as a matter of law anyway.

[35] Note, the Decl. at ¶ 5 says sixty (60) hours "per day" but it is clear from the rest of the paragraph with the hours listed that Bin Yang intended to say around sixty (60) hours per *week*.

claims that he was not paid an additional hour of pay for each hour worked over ten hours per day or an additional hour of pay for each split shift worked in a day.  *Id.* at ¶ 7.

Regarding the above periods, this Court finds that Bin Yang's claims are not credible.  First, even upon a cursory read of the Paystubs, Bin Yang was *always* compensated for overtime.  *See, e.g.*, ECF 231-12 [Bin Yang Paystubs] at pdf page 5 (recording 46.20 hours and 6.20 of those hours were for overtime during the January 6. 2014 to January 12, 2014 pay period).[36]  Moreover, Bin Yang's own written records confirm that he was paid for the *same number* of hours he recorded, which further bolsters Defendants' credibility.  *See, e.g*., at ECF 231-13 at pdf page 67 [Working Sheets].  Hence, the Working Sheets further corroborate Defendants' position.

Bin Yang also claims that he did not have lunchbreaks while employed by Defendants and that he was required to fraudulently record half-hour breaks on his time sheets.  *Id.* at ¶ 8. However, the lunch breaks are recorded on the time sheets discussed above *supra*, meaning the Company relied upon the false information that Bin Yang provided.  Furthermore, this Court also finds that Bin Yang did not fill out any corrections about not taking a lunch break, despite all employees having the opportunity to do so.  *See* Roberts Trial Tr. at 119:18-23.

(b) Conclusions of Law

This Court reincorporates its analysis *supra* regarding Chang and reaches the same conclusions of law.  Specifically, Defendants rebutted the presumption that Bin Yang's Agreement from December 11, 2013 was only for forty (40) hours per week since fifty-five (55) hours was explicitly stated.  Moreover, the Time Sheets and Pay Stubs discussed *supra* show that Bin Yang consistently received proper overtime for his hours worked.  Thus, the evidence shows that Bin

---

[36] Note, Defendants may have rounded down when adding the hour, but the results are functionally equivalent and show a good faith attempt by Defendants to pay wages due.  Hence, this Court finds that the Time Sheets further corroborate Defendants' position.

Yang is not entitled to any additional overtime or wages.

Regarding Bin Yang's lunchbreaks, this Court concludes that, like the other Plaintiffs discussed *supra*, since Bin Yang claims he falsely recorded lunchbreaks, no recovery should be awarded here. Defendants were simply relying upon the false information Bin Yang provided.

Finally, Bin Yang's spread of hours and wage notice and wage statements claims also fail as a matter of law since Bin Yang earned above minimum wage and all the evidence shows that Defendants paid Bin Yang his complete wages due.

### 9. *Defendants' Counterclaims*

The Court also finds that there is no basis for Defendants' counterclaims, which tmay be summarized as follows per Defendants' Proposed Findings of Fact, ECF 236 at 36-38.

### (a) Alleged Overpayment to Plaintiff Duke Lee

This Court finds that Defendants' counterclaim against Duke Lee has no merit and is barely comprehensible from the outset. Specifically, Defendants claim that: "Even if as Duke Lee alleged that he worked in his own Declaration ECF No.160-3 filed on 10/21/22, he only worked from Monday to Friday from 9:00AM to 6PM or 7APM but on Saturday I worked from 9:00 AM to 3:00PM. Even if acceptating as true, each week he worked less at 2 working hours than the time that both parties agreed with. Defendants overpaid Plaintiffs for by each week for 2 hours."[37] *Id.* at 36-37. However, Defendants have pointed to no evidence suggesting Duke Lee even *knew* that he was allegedly overpaid, assuming that was the case, nor has counsel provided any case law showing a viable counterclaim based upon such conclusory statements. Therefore, this Court concludes that Defendants' counterclaim against Duke Lee has no merit.

### (b) Alleged Overpayment to Plaintiff Ya Xu

---

[37] Note, the Court intentionally left Defendants' statement unaltered including the typographical errors to show that Defendants' counterclaim against Plaintiff Duke Lee is barely comprehensible.

Similarly this Court also finds that that Defendants' counterclaim against Ya Xu also has no merit.  Specifically, Defendants assert that: "Because of management error which result in overpayment to Plaintiff Ya Xu, as a driver, her hourly rate is $9.37 per hour.  But the Defendant Clean Air Corp overpaid her $11 per hour for the first week that she worked as driver therefore, Defendant Clean Air Corp. overpaid Plaintiff Ya Xu for each hour $1.63 for any hour that she worked as driver in the first week from 6/22/2015 to 6/28/2015, in total for 52.43 hours with total amount for overpayment $118.05 plus interest."[38]  *Id.* at 37.  Once again, Defendants have noted no evidence suggesting Ya Xu even *knew* about the alleged overpayment, assuming that occurred, nor has counsel provided any case law showing a viable counterclaim based upon such conclusory statements.  Therefore, this Court concludes Defendants' counterclaim against Ya Xu has no merit.

    (c) "Bad Faith litigation and should pay for the litigation cost"[39]

This Court likewise finds that Defendants' "bad faith litigation claim" and request for attorneys' fees should be denied and has no merit.  Specifically, Defendants assert that: "All Plaintiffs have no legal basis to sue Defendants for any claims that they raised in th compaints. Plaintiffs and their attorney knowingly knew they have no basis to sue defendants, they filed lawsuits against Defendants anyway. In the trial, all of plaintiffs either lied to the Court or have no reasonable basis to continue the litigation but they litigate this frivolous litigation anyway. Therefore, both plaintiffs and their attorneys/law first should be liable for Defendants with their costs and attorney fees."  *Id.* at 37.  While this Court agrees that Plaintiffs were ultimately unable to prove their claims by a preponderance of the evidence, this Court does not believe the litigation was made in bad faith.  Defendants' counterclaim on this basis essentially amounts to nothing

---

[38] Again, the Court intentionally left Defendants' statement unaltered including the typographical errors to show that Defendants' counterclaim against Plaintiff Ya Xu is barely comprehensible.
[39] Once again, the Court intentionally left Defendants' phrasing as is for this claim.

more than a conclusory statement that because Plaintiffs lost they therefore must have acted in bad faith.  Without more, such an argument is insufficient to establish Defendants' entitlement to attorneys fees and costs.  *See Zhang v. Ichiban Grp., LLC*, No. 1:17-CV-148 (MAD/TWD), 2024 WL 2923949, at *2 (N.D.N.Y. June 10, 2024) (declining to award attorneys' fees to prevailing Defendant in FLSA case where "Defendants make entirely conclusory allegations that '[t]he claims in the above captioned action appear to have been fabricated by Plaintiff [sic] counsel,' and contend that Plaintiff counsel did not exercise due diligence in ascertaining the merits of the claims asserted before filing or at any time during the prosecution of the action."); *see also Colucci v. New York Times Co.*, 533 F. Supp. 1011, 1012 (S.D.N.Y. 1982) ("The fact that plaintiff failed to sustain his claim does not necessarily mean the defendant is automatically entitled to such [attorneys'] fees. Fees may be granted only should the Court find the plaintiff's claims were "frivolous, unreasonable or groundless, or that plaintiff continued to litigate after (they) clearly became so.").  Given that this Court concludes Plaintiffs' counsel did not act in bad faith and Defendants provide no other basis for an attorneys' fees award, this Court concludes that Defendants' counterclaims fail as well.[40]

---

40 To the extent that Defendants implicitly argue for any other counterclaims elsewhere, or made such ambiguous statements during trial, the Court does not find any viable basis for any counterclaims from Defendants.

## IV.     CONCLUSION

For the reasons set forth above, this Court finds that Plaintiffs have failed to prove all of their claims by a preponderance of the evidence against all Defendants and, therefore, no damages are awarded.  Likewise, Defendants have failed to prove their counterclaims by a preponderance of the evidence as well.  Judgment shall be entered accordingly.


**SO ORDERED.**


/s/ Steven Tiscione
Steven Tiscione
United States Magistrate Judge
Eastern District of New York


Dated: Central Islip, New York
June 28, 2024